# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia Brennan, : 
           Petitioner : 
            : 
          v. : No. 1727 C.D. 2017
            : Submitted: March 23, 2018
Workers' Compensation Appeal : 
Board (Commonwealth of : 
Pennsylvania, House of : 
Representatives), : 
           Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
**JUDGE COHN JUBELIRER**              **FILED: June 22, 2018**

Patricia Brennan (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ). Claimant filed two Petitions to Review Compensation Benefits for incorrect description of injury (Review Petitions) and a Petition to Reinstate Compensation Benefits (Reinstatement Petition), which the WCJ denied. The WCJ granted the Petition to Terminate Benefits (Termination Petition) filed by Employer, the Commonwealth of Pennsylvania, House of Representatives. On appeal, Claimant argues the denial of her Review and Reinstatement Petitions and the grant of Employer's Termination Petition were in error because the conclusions

that she did not meet her burdens of proof, and Employer did, are not supported by substantial evidence. Because the WCJ did not credit Claimant or her expert witness but instead credited Employer's evidence that Claimant did not sustain any work-related injuries beyond those accepted and that she had fully recovered from those injuries, there was no error in granting Employer's Termination Petition and denying Claimant's Review and Reinstatement Petitions. Accordingly, we affirm.

## I. Background

Claimant worked for Employer as an office manager/legislative assistant until July 2012, when she stopped working due to pain in her left wrist. Employer issued a Notice of Compensation Payable (NCP) accepting a work-related injury in the nature "of a left wrist strain due to repetitive motion," and Claimant began receiving compensation benefits. (WCJ Decision, Findings of Fact (FOF) ¶ 9.) Employer issued an Amended or Corrected NCP (Amended NCP) on January 15, 2014, changing the description of Claimant's work-related injury to "left wrist strain and de Quervain['s] [S]yndrome."[1] (*Id.*) Claimant continued to receive compensation benefits until November 19, 2014, when the WCJ suspended those benefits as of April 3, 2013, the date Employer offered Claimant a modified duty job, which she did not accept. The WCJ, in the November 19, 2014 decision, also expanded the description of Claimant's work-related injury to include left de Quervain's Syndrome. The Board affirmed the suspension of Claimant's benefits and expansion of the work-related injury, as did this Court in *Brennan v. Workers' Compensation*

---

[1] The parties, witnesses, and decisions use the terms "de Quervain" or "de Quervain's" "syndrome," "synovitis," "tendonitis," or "tenosynovitis." For consistency, we will refer to this injury as de Quervain's Syndrome.

*Appeal Board (Commonwealth of Pennsylvania)* (Pa. Cmwlth., No. 270 C.D. 2016, filed December 21, 2016) (*Brennan I*).

While the suspension proceedings were ongoing, the Petitions at issue here were filed. Claimant filed the first Review Petition on October 24, 2014, alleging that, as of that date, the description of the work-related injury was incorrect, she had a worsening of her condition, and she now suffered from de Quervain's Syndrome in both her left and right hands. Claimant filed the Reinstatement Petition on December 18, 2014, alleging that, as of that date, her work-related condition had worsened and her compensation benefits should be reinstated. Claimant filed the second Review Petition on February 5, 2015, which was subsequently amended at a hearing, seeking to add "bilateral CMC [S]ynovitis"[2] to the description of her work injury. (FOF ¶¶ 5, 7.) Employer issued timely answers to each of the Petitions, denying the allegations set forth therein. On September 3, 2015, Employer filed the Termination Petition, averring, based on the opinions of Richard Mandel, M.D., that Claimant was fully and finally recovered from her accepted work-related injuries as of August 18, 2015. The Petitions were assigned to the WCJ for resolution.

Claimant testified in support of her Petitions both in person before the WCJ and by deposition. In her deposition, Claimant described her work history, her work duties, the development of her left hand symptoms in June and July 2012, and the subsequent development of symptoms in her right hand and wrist in November 2012. (FOF ¶ 12.) She explained she told various physicians, including Robert J. Cabry, Jr., M.D., in November 2012 of the symptoms in her right hand, which she asserted had begun to develop in September or October, several months after she left work. According to Claimant, she received a splint for and injections into her right hand

---

[2] The CMC is a joint in the thumb. (FOF ¶ 17e.)

3

and wrist, as well as prescription medicines and ultrasound treatments, which gave her minimal relief. Claimant sought an additional medical opinion, at her counsel's suggestion, from Todd M. Kelman, D.O. Claimant testified that, per Dr. Kelman's advice, she stopped receiving the injections and wearing the wrist splints and began going to physical therapy, which helped her with her daily activities. Claimant indicated that, after her right hand symptoms developed, she was unable to perform daily activities, such as taking out recycling or opening jars or cans, she had modified her computer use by using Siri and voice activated software, and she no longer performed volunteer work. As of August 7, 2015, Claimant did not believe she could return to her pre-injury position because "[i]t's constant typing all day long," which "puts a strain on [her] thumbs" at the base and "going up into [her] wrists." (*Id.* ¶ 12g.) Claimant has not worked since July 24, 2012, and was receiving Social Security Disability Benefits for her de Quervain's Syndrome and pension benefits from Employer.

Claimant testified in person before the WCJ on February 18, 2016, reiterating her prior testimony regarding the development of the symptoms in her right hand and indicating she was still treating with Dr. Cabry for "[p]ain and swelling in both [her] wrists and thumbs," although the symptoms were calmer due to her inactivity and medications. (*Id.* ¶ 13a-c.) She was examined by A. Lee Osterman, M.D.,[3] who advised Claimant that she could either have surgery or live with her hand condition, which was consistent with the recommendation of other physicians. According to Claimant, she has not developed any additional symptoms since the right hand symptoms began, but those symptoms worsen if she attempts to use her hands in any kind of regular or repetitive basis. She testified, again, that she has modified her life

---

[3] The finding of fact indicates this advice came from Dr. Mandel, Employer's expert; however, it was Dr. Osterman who gave her this advice. (*See* FOF ¶ 12c.)

4

activities due to her work injury in that she cannot lift or carry anything. Claimant indicated she had not seen Dr. Kelman since June 2015 and confirmed that she had, effective October 15, 2014, retired from her position with Employer.

Claimant offered the deposition testimony of Dr. Kelman, a board-certified orthopedic surgeon, who sees patients but no longer performs surgery. He examined Claimant on March 16, 2015, for "complaint[s] of bilateral wrist pain pointing to the thumb and to the radial or thumb side of the wrist." (FOF ¶ 15b.) According to Dr. Kelman, Claimant described her right wrist as being worse than her left. After examining Claimant and reviewing the medical records of Claimant's treatment since July 2012, including those of Dr. Cabry, Dr. Kelman opined that Claimant suffered from "bilateral de Quervain's [Syndrome]" and "bilateral CMC [S]ynovitis[,] which is an inflammation of the joint that's deeper to that tendon at the base of the thumb." (FOF ¶ 15h.) He related these injuries to "the repetitive nature of [the] work that [Claimant] described to [him] and then also overuse related to the fact that she had limited use of her left [hand]." (*Id.*) Dr. Kelman saw Claimant again on April 7, 2015, and on June 11, 2015. At the later examination, Dr. Kelman indicated Claimant had no pain in the CMC joint that day, the grind test did not produce any pain, and she had no swelling. He agreed, on cross-examination, that as of June 11, 2015, "there was no evidence of clinical synovitis" and that he did not "have any additional information to indicate that that's an ongoing problem." (*Id.* ¶ 15k.) Dr. Kelman acknowledged that Claimant had stopped working in July 2012, and there was no documentation that Claimant was having right-sided complaints at that time, but opined that Claimant's "right-sided de Quervain's [S]yndrome [was] indirectly causally related to her employment." (*Id.* ¶ 15m, n.) In his medical report, Dr. Kelman opined that Claimant could not "return to her

5

previous occupation due to her ongoing chronic complaints." (Reproduced Record (R.R.) at 224a.)

Employer offered Dr. Mandel's deposition testimony. He is board-certified in orthopedic surgery with an added qualification for the hand, and a vast majority of his patients have hand or upper extremity issues. Dr. Mandel performed an Independent Medical Examination (IME) of Claimant on August 18, 2015, and Claimant's complaints were more severe on the right side than the left. He testified his physical examination revealed no objective abnormalities, only subjective complaints. Dr. Mandel stated many of Claimant's physicians recommended surgery, but Claimant told him that none could give her statistics regarding the success of such surgeries, something Dr. Mandel found "hard to believe." (FOF ¶ 17c, s.) Based on his examination of Claimant, the history Claimant provided, and his review of Claimant's medical records, Dr. Mandel opined Claimant had sustained work-related de Quervain's Syndrome of the left wrist, but was fully recovered therefrom and required no restrictions for that injury. This opinion, he noted, was consistent with Dr. Cabry's notes from June 2013, which indicated that Claimant's examination results were negative for de Quervain's Syndrome in her left hand. According to Dr. Mandel, the alleged bilateral CMC Synovitis and Claimant's right de Quervain's Syndrome were not work-related, nor were they aggravated by her work. He disagreed with Dr. Kelman's opinion relating the additional injuries to Claimant's work, noting that Claimant "was not doing production work" or engaged in "heavy duty repetitive taxing work with . . . her right hand because she couldn't use her left" and that Claimant's symptoms did not appear until six months after she stopped working. (*Id.* ¶ 17g.) Dr. Mandel explained that de Quervain's Syndrome can develop spontaneously in Claimant's age group and

6

can resolve on its own and that CMC Synovitis is a degenerative, age-related condition that develops more commonly in females. Dr. Mandel further opined that, should the WCJ find that Claimant's work-related injury did include right de Quervain's Syndrome, Claimant had fully recovered and needed no further treatment.

The parties also introduced the deposition testimonies of Elizabeth M. Post, M.D., who performed an IME of Claimant on Employer's behalf, and Dr. Cabry, Claimant's treating physician, which were previously offered in the suspension proceedings. These depositions relate to Claimant's condition and ability to return to work as of October 14, 2013, and December 18, 2013, respectively. Dr. Post diagnosed Claimant with "de Quervain's [S]yndrome of her hand" but could not "specifically relate it to any incident at work," although other physicians had done so. (*Id.* ¶ 14g.) Dr. Post did not think Claimant had fully recovered from her left de Quervain's Syndrome, but Claimant could perform sedentary work and could have performed the position Employer offered in April 2013. Dr. Cabry testified Claimant did not complain of right-sided symptoms until January 2013, at which time he diagnosed Claimant with right de Quervain's Syndrome. (*Id.* ¶ 16g.) He treated Claimant's bilateral conditions with prescription medicine and ultrasound, and opined Claimant could not return to work at the position offered by Employer in April 2013. After learning that Claimant had not worked since July 2012, which he had not known, Dr. Cabry could not say that her right-sided complaints were "related to her work." (*Id.* ¶ 16n.) As of Dr. Cabry's August 14, 2013 examination, Claimant had no work restrictions.

Citing Claimant's "demeanor and comportment" during her in-person testimony, the inconsistencies within Claimant's testimony regarding when the

7

symptoms began on the right side, and the opinions of multiple medical experts who, contrary to Claimant's testimony, did not relate the additional injuries to Claimant's work, the WCJ did not find Claimant's testimony "to be credible, convincing and worthy of belief." (*Id.* ¶ 19.) As she had in the suspension proceeding, the WCJ found the testimony of Dr. Post and Dr. Cabry to be credible and convincing as to their opinions on Claimant's medical condition in 2013, but found Dr. Post's testimony regarding Claimant's ability to return to work to the modified duty position offered in April 2013 to be more credible than Dr. Cabry's contrary opinion, which was specifically rejected. (*Id.* ¶ 18.) The WCJ credited Dr. Mandel's opinions over Dr. Kelman's contrary opinions, providing objective reasons for that determination, including: Dr. Mandel's training and qualifications, including his extensive years of evaluation and treatment of patients with upper extremity issues; Dr. Mandel's opinion that the right de Quervain's Syndrome was not work-related was consistent with Dr. Post's and Dr. Cabry's opinions; Dr. Mandel's opinions were "consistent[,] well- reasoned [sic], logical[,] and supported by the medical records"; and Dr. Kelman's diagnoses were based on Claimant's subjective complaints and the WCJ did not find Claimant to be credible. (*Id.* ¶ 20.)

The WCJ found that: Claimant "ha[d] effectuated a full recovery from her" work-related injuries as of August 18, 2015, the date of Dr. Mandel's examination; Claimant did not sustain any work-related injury to "her right hand, wrist or upper extremity"; Claimant did not sustain any additional work-related injury to her left hand; and Claimant's work-related "injury did not worsen necessitating the reinstatement of compensation benefits." (*Id*. ¶¶ 21-24 (emphasis omitted).) On this last point, the WCJ observed that even Dr. Kelman testified that Claimant's left-wrist injury had improved. (*Id.* ¶ 24.) Based on these findings, the WCJ concluded

8

Employer met its burden of proof on the Termination Petition, and Claimant did not meet her burdens of proof on the Review and Reinstatement Petitions. (WCJ Decision, Conclusions of Law (COL) ¶¶ 2, 4-5.) Thus, the WCJ denied the Review and Reinstatement Petitions, granted the Termination Petition, and terminated Claimant's compensation benefits as of August 18, 2015. (WCJ Decision, Order.)

Claimant appealed to the Board, arguing the WCJ's credibility determinations and the findings based on those determinations were not supported by substantial competent evidence. The Board affirmed, observing the WCJ had complete authority over credibility, conflicting medical evidence, and evidentiary weight. According to the Board, having rejected the testimony of Claimant and Dr. Kelman as not credible and accepted Dr. Mandel's testimony as credible, the WCJ did not err in denying the Review and Reinstatement Petitions or in granting the Termination Petition. Claimant now petitions this Court for review.[4]

## II. Discussion
### A. Claimant's Ability to Return to Work - 2013

Claimant first challenges the WCJ's "comparison of the opinions of Dr. Post and Dr. Cabry" as they relate to Claimant's ability to return to work at the position Employer offered Claimant in April 2013. (Claimant's Brief (Br.) at 28-31.) In pertinent part, she asserts that Dr. Post's opinion that Claimant could return to work at the modified duty position was inconsistent with Dr. Post's own work restrictions. However, the WCJ's credibility determination on this testimony in the present matter

---

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law[,] or whether necessary findings of fact are supported by substantial evidence." *City of Phila. v. Workers' Comp. Appeal Bd. (Sherlock)*, 934 A.2d 156, 159 n.5 (Pa. Cmwlth. 2007).

9

is nearly identical to the one made in the prior suspension proceeding. (*Compare* FOF ¶ 18 *with* WCJ Decision, November 19, 2014, FOF ¶ 11, R.R. at 425a.) Claimant unsuccessfully challenged this prior credibility determination before the Board and this Court in *Brennan I*. *See Brennan I*, slip op. at 5, 7. Claimant's ability to return to work at the modified position offered by Employer in April 2013, and the suspension of her compensation benefits based on that unaccepted offer, have been litigated to completion. Therefore, we will not reconsider arguments in this appeal that Claimant made previously, and which have been rejected.

## B. Review and Reinstatement Petitions

### 1. Argument

Claimant next argues she satisfied her burdens of proof on the Review and Reinstatement Petitions and, therefore, the WCJ erred in not amending the description of her work-related injury and in not reinstating her compensation benefits.[5] Claimant asserts she established, through Dr. Kelman's testimony, that the description of her injury in the Amended NCP should be expanded to include right de Quervain's Syndrome and bilateral CMC Synovitis. She further argues that, based on her testimony and that of Dr. Kelman, she proved her condition had worsened as a result of her developing additional work-related injuries, and she could no longer perform the modified duty position upon which the prior suspension of her benefits was based. In support of her argument, Claimant points out what she believes are flaws in Dr. Mandel's testimony, such as that: his opinion that age and gender play a role in the development of de Quervain's Syndrome was based on his experience in his practice, rather than on specific citation to any medical or scientific

---

[5] We have consolidated two of Claimant's arguments for ease of discussion.

journals; and his opinion that a person can fully recover from de Quervain's Syndrome without having surgery, which the other physicians opined was required.

## 2. Burdens of Proof

The relevant burdens of proof related to review and reinstatement petitions are as follows. A claimant may seek to amend the description of an injury in an NCP by filing a review petition and by meeting her burden of proving that she suffered additional injuries "as a result of the work-related . . . injury for which [the] employer accepted liability." *Commercial Credit Claims v. Workmen's Comp. Appeal Bd. (Lancaster)*, 728 A.2d 902, 906 (Pa. 1999). This burden is the same as if the claimant had filed an original claim petition. *Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Korach)*, 883 A.2d 579, 592 (Pa. 2005). Accordingly, where the causal connection between the injury and employment is not obvious, the claimant must present credible, unequivocal medical evidence establishing causation. *Gribble v. Workers' Comp. Appeal Bd. (Cambria Cty. Ass'n for the Blind)*, 692 A.2d 1160, 1163 (Pa. Cmwlth. 1997). To prove an entitlement to the reinstatement of suspended benefits, a claimant "must prove that his or her earning power is once again adversely affected by his or her disability, and that such disability is a continuation of that which arose from his or her original claim." *Bufford v. Workers' Comp. Appeal Bd. (N. Am. Telecom)*, 2 A.3d 548, 558 (Pa. 2010).

## 3. Analysis

In arguing her evidence satisfied her burdens of proof on the Review and Reinstatement Petitions, Claimant requests this Court to reweigh the evidence and find in her favor. However, it is well-settled that the WCJ is the fact finder, and the review of the witnesses' testimony and determinations as to the weight and

credibility of that evidence are solely for the WCJ. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. and Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* "[T]he appellate role is not to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Where the WCJ is required to assess the credibility of deposition testimony, the WCJ must articulate objective bases for crediting one witness's deposition testimony over another witness's deposition testimony. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053-54 (Pa. 2003). But, if a witness testifies in person, the WCJ may base a credibility determination on demeanor of the witness. *Id.*

Here, the WCJ rejected Claimant's testimony and that of her expert, Dr. Kelman, choosing instead to credit the testimony of Dr. Mandel. The WCJ provided objective bases for her credibility determinations related to Dr. Mandel and Dr. Kelman, and cited numerous factors, including Claimant's demeanor and inconsistencies within Claimant's testimony regarding when the new symptoms arose, in rejecting Claimant's testimony. While Claimant cites what she claims are flaws in Dr. Mandel's testimony, such as his inability to cite medical or scientific journals in support for his opinions that de Quervain's Syndrome can occur spontaneously and more frequently in older women, and that a person can recover from de Quervain's Syndrome without surgery even though others said surgery was required, she does not assert that Dr. Mandel's testimony was incompetent. Rather, she compares Dr. Mandel's testimony to Dr. Kelman's testimony and argues that this Court should conclude that she did suffer work-related right de Quervain's Syndrome and bilateral CMC Synovitis. As such, Claimant is challenging the

12

weight given to Dr. Mandel's testimony by the WCJ.[6] We will not infringe upon the WCJ's role as fact finder and reweigh the evidence as Claimant requests. Because Claimant's evidence that she sustained additional work-related injuries and that her condition had worsened to the point that her earning power was again adversely affected was not credited, the WCJ properly concluded Claimant did not meet her burdens of proof on the Review and Reinstatement Petitions.

## C. Termination Petition

### 1. Argument

Claimant last argues that Employer did not meet its burden of proving its entitlement to the termination of her compensation benefits because Dr. Mandel's opinion addressed only the injuries described in the Amended NCP. She asserts that, if this Court concludes the description of Claimant's work-related injury should have been expanded to include right de Quervain's Syndrome and bilateral CMC

---

[6] Even if Claimant had challenged Dr. Mandel's competency, "[c]ompetency when applied to medical evidence, is merely a question of whether the witnesses' opinion is sufficiently definite and unequivocal to render it admissible." *Cramer v. Workmen's Comp. Appeal Bd. (Uni-Marts)*, 627 A.2d 231, 233 (Pa. Cmwlth. 1993). Whether medical testimony is competent is a question of law, subject to this Court's full review. *Id.* Dr. Mandel acknowledged he could not provide an exact percentage of the spontaneous development of de Quervain's Syndrome in females "in the fifth and sixth decades" because he did not think he had seen statistics on that in the literature, but he explained that in his practice of seeing "[h]undreds and hundreds of patients" of different ages over the years, about 40 to 50 percent of the de Quervain's Syndrome cases are spontaneously developed. (R.R. at 345a.) Further, Dr. Mandel testified that, even though other physicians indicated Claimant could either have surgery or live with the de Quervain's syndrome and that Claimant would have recovered earlier had she had surgery, it was not "unusual" for Claimant to recover without surgery because "people do recover from de Quervain's without undergoing surgery." (*Id.* at 339a.) Dr. Mandel was unequivocal in his opinions and, notably, began practicing medicine in 1977 and had obtained board-certification in orthopedic surgery and an additional certificate in treating hand injuries, thereby giving him almost 40 years of specialized experience in support of his opinion. (*Id.* at 372a-73a.) Thus, Dr. Mandel's opinions, based on that 40 years of experience, were "sufficiently definite and unequivocal" and, therefore, competent. *Cramer*, 627 A.2d at 233.

13

Synovitis, Dr. Mandel's opinion of full recovery is legally insufficient to support the termination of benefits as it does not address these additional injuries.

## 2. Burden of Proof

To obtain a termination of benefits, an employer has to prove "that the claimant fully recovered from h[er] work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 402 n.13 (Pa. Cmwlth. 2015). An employer meets this burden when its medical expert unequivocally testifies that "it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). Where a particular injury has been accepted or adjudicated as being work-related, a physician's opinion of full recovery that does not recognize and address that injury is insufficient to support the termination of benefits. *GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087, 1092 (Pa. Cmwlth. 2001).

## 3. Analysis

Claimant acknowledges that Dr. Mandel testified that Claimant had fully recovered from the work-related injuries accepted in the Amended NCP. (Claimant's Br. at 35.) Dr. Mandel also testified there were no objective abnormalities observed during his examination and Claimant could return to her pre-injury position without restrictions related to the left de Quervain's Syndrome. (FOF

¶ 17e, i, *l*.) Employer met its burden of proof on the Termination Petition through this credited testimony. To the extent Claimant asserts Dr. Mandel had to opine that she was fully recovered from the right de Quervain's Syndrome and the bilateral CMC Synovitis, her assertion is premised on this Court accepting her arguments that the Review Petitions should have been granted. Having rejected Claimant's arguments in that regard, the only work-related injuries at issue were those accepted in the Amended NCP. Because Dr. Mandel's credible testimony addressed those injuries, there was no error in granting the Termination Petition.

### III. Conclusion

For the foregoing reasons, we affirm the Board's Order.

_____

**RENÉE COHN JUBELIRER,** Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia Brennan,                                   :
                          Petitioner        :
                                :
                v.        :    No. 1727 C.D. 2017
                                :
Workers' Compensation Appeal            :
Board (Commonwealth of                       :
Pennsylvania, House of                           :
Representatives),                                      :
                    Respondent        :

# **O R D E R**

    **NOW**, June 22, 2018, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.

                          _____
                          **RENÉE COHN JUBELIRER,** Judge